UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————— x
FRED P. CAMPO, Individually, and On          :    Civil Action No. 1:06-cv-04053-JES
Behalf of All Others Similarly Situated,     :
                                             :    <u>CLASS ACTION</u>
                Plaintiff,                   :
                                             :
        vs.                                  :
                                             :
SEARS HOLDINGS CORPORATION, et al.,          :
                                             :
                Defendants.                  :
                                             :
———————————————————— 
ELLEN DORSCH, et al., On Behalf of           :    Civil Action No. 1:06-cv-05781-UA
Themselves and All Others Similarly Situated,:
                                             :    <u>CLASS ACTION</u>
                Plaintiffs,                  :
                                             :
        vs.                                  :
                                             :
EDWARD S. LAMPERT, et al.,                   :
                                             :
                Defendants.                  :
———————————————————— x

MEMORANDUM IN SUPPORT OF THE MOTION OF PLUMBERS AND PIPEFITTERS
NATIONAL PENSION FUND FOR CONSOLIDATION, APPOINTMENT AS LEAD
PLAINTIFF AND FOR APPROVAL OF SELECTION OF LEAD COUNSEL

# TABLE OF CONTENTS

**Page**

I. PRELIMINARY STATEMENT ....................................................................1

II. FACTUAL BACKGROUND ......................................................................2

III. ARGUMENT ..............................................................................................4

    A. The Actions Should Be Consolidated For All Purposes ..........................4

    B. Plumbers and Pipefitters Fund Should Be Appointed Lead Plaintiff ....................5

        1. The Procedure Required by the PSLRA ........................................5

        2. Plumbers and Pipefitters Fund Satisfies the "Lead Plaintiff" Requirements of the Exchange Act ..............................................6

            a. Plumbers and Pipefitters Fund Has Complied with the Exchange Act and Should Be Appointed Lead Plaintiff ...............6

            b. Plumbers and Pipefitters Fund Is Precisely the Type of Lead Plaintiff Congress Envisioned When it Passed the PSLRA ..........................................................................6

            c. Plumbers and Pipefitters Fund Has the Requisite Financial Interest in the Relief Sought by the Class ........................................7

            d. Plumbers and Pipefitters Fund Otherwise Satisfies Rule 23 ...........7

    C. The Court Should Approve Plumbers and Pipefitters Fund's Choice of Counsel ...............................................................................10

IV. CONCLUSION.........................................................................................10

## I.      PRELIMINARY STATEMENT

Presently pending before this Court are two related securities class action lawsuits (the "Actions") brought on behalf of sellers of the common stock of Kmart Holding Corporation ("Kmart" or the "Company"), the predecessor to Sears Holdings Corporation ("Sears"), between May 6, 2003 and June 4, 2004, inclusive (the "Class Period").  The Actions allege violations of §§10(b) and 20(a) of the Securities Exchange Act of 1934 ("the Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA") (15 U.S.C. §78) and SEC Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5).

Institutional Investor Plumbers and Pipefitters National Pension Fund ("Plumbers and Pipefitters Fund") hereby moves this Court for an Order to: (i) consolidate the related actions; (ii) appoint Plumbers and Pipefitters Fund as Lead Plaintiff in the Actions under §21D(a)(3)(B) of the Exchange Act; and (iii) approve Plumbers and Pipefitters Fund's selection of the law firm of Lerach Coughlin Stoia Geller Rudman & Robbins LLP ("Lerach Coughlin") to serve as Lead Counsel.

This motion is made on the grounds that Plumbers and Pipefitters Fund is the most adequate plaintiff, as defined by the PSLRA.  Plumbers and Pipefitters Fund is precisely the type of institutional investor that Congress sought to summon and empower when it enacted the PSLRA.  *See Ferrari v. Impath, Inc.,* No. 03 Civ. 5667 (DAB), 2004 U.S. Dist. LEXIS 13898, at *10 (S.D.N.Y. July 15, 2004) (holding that the purpose behind the PSLRA is best achieved by encouraging institutional investors to serve as lead plaintiffs).  Moreover, as an institutional investor, Plumbers and Pipefitters Fund is accustomed to acting as a fiduciary and its experience in legal and financial matters will substantially benefit the class.

During the Class Period, Plumbers and Pipefitters Fund sold 37,575 shares of Kmart stock at $28.85 per share and suffered losses thereby.  *See* Rudman Decl., Ex. B.[1]  To the best of its knowledge, this is the greatest loss sustained by any moving class member or class member group who has brought suit or filed an application to serve as Lead Plaintiff in these Actions.  In addition, Plumbers and Pipefitters Fund, for the purposes of this Motion, adequately satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure in that its claims are typical of the claims of the putative class and that it will fairly and adequately represent the interests of the class.

## II.   FACTUAL BACKGROUND

During the Class Period, Kmart described itself as a "mass merchandising company that offers customers quality products through a portfolio of exclusive brands that include Thalia Sodi, Jaclyn Smith, Joe Boxer, Kathy Ireland, Martha Stewart Everyday, Route 66 and Sesame Street. Kmart operates more than 1,500 stores in 49 states."  On January 22, 2002, Kmart and 37 of its U.S. subsidiaries filed voluntary petitions for reorganization under Chapter 11 of the U.S. Bankruptcy Code.  In the liquidation analysis filed in bankruptcy court, Kmart's real estate was valued at only $800 million.

Once Kmart entered into bankruptcy, Defendant Edward S. Lampert ("Lampert")[2], through his hedge fund, ESL Investments, Inc. ("ESL"), purchased approximately $1 billion of Kmart bonds and bank debts.  ESL was known to be a "vulture fund" – a company that buys into struggling

---

[1]   References to the "Rudman Decl., Ex. ___" are to the exhibits attached to the accompanying Declaration of Samuel H Rudman dated August 1, 2006, and submitted herewith.

[2]   Defendant Lampert became Chairman of Sears' Board of Directors when Sears and Kmart merged into a combined company.  Prior to the merger, he was Kmart's chairman and owned nearly 53 percent of Kmart's stock through his ESL hedge fund. Moreover, he was also the largest shareholder in Sears because, at that time, ESL held a 15 percent stake in Sears.

companies and either forces a new management or finds a purchaser for the business.  In this case,
Lampert put himself on Kmart's creditors committee, installed a new management and appointed
himself as Chairman of the new company.  Defendant Lampert then exchanged the bonds and debt
that he invested in Kmart into shares of stock in the reorganized Kmart.

Throughout the Class Period, Kmart and Defendant Lampert filed quarterly and annual
reports which valued Kmart's approximate 1,500 stores at prices well below their true market value.
Specifically, on June 16, 2003, after Kmart's emergence from bankruptcy, the highest that Kmart
valued its total assets, which included cash, merchandise inventories, accounts receivable, property
and equipment, and other assets, was $6.6 billion.

On June 4, 2004, Kmart announced its intention to sell up to 24 of its stores for a maximum
purchase price of $365 million to The Home Depot, Inc. ("Home Depot").  On August 23, 2004,
Kmart finalized the transaction with Home Depot, selling 18 stores for $271 million in cash, or
approximately $15 million per store.

On June 30, 2004, Kmart announced that it will sell up to 54 of its stores for a maximum
purchase price of $621 million in cash to Sears, Roebuck and Co. ("Sears Roebuck").  On September
30, 2004, Kmart finalized the transaction with Sears, selling 50 stores for $575 million in cash, or
approximately $11.5 million per store.

The two transactions grossed approximately $846 million, or $12.4 million per store and
valued Kmart's approximately 1,500 stores at more than $17 billion.  However, throughout the Class
Period, the highest reported total asset value, including non-real estate assets, was $6.6 billion – 30%
of its true value.

As a direct result of these transactions, Kmart's common stock price dramatically increased
because investors now learned that the Company's assets had far greater value than they were

previously led to believe.  Specifically, on June 4, 2004, when Kmart announced its first agreement to sell some of its stores at an approximate value of $15 million per store, Kmart's common stock increased $7.67 per share, or approximately 12%, and closed at $62.53 per share.  On November 17, 2004, when Kmart announced its merger with Sears, Kmart's common stock closed at $109.00 per share.  From the news of the first agreement to sell some of its stores through the announcement of its merger agreement with Sears, Kmart shares more than doubled.  However, Kmart stockholders, who relied on the representations of Kmart's asset values in Kmart's SEC filings during the Class Period, and who sold their Kmart stock prior to June 4, 2004, lost out on any increase in the value of Kmart's stock.

## III.    ARGUMENT

### A.    The Actions Should Be Consolidated For All Purposes

The Actions each assert class claims on behalf of the sellers of Kmart common stock for alleged violations of the Exchange Act during the relevant time period.  The Actions name virtually the same defendants and involve the same factual and legal issues.  They are each brought by investors who sold Kmart common stock during the relevant time period in reliance on the integrity of the market for such securities and were injured by the fraud on the market that was perpetrated through the issuance of materially false and misleading statements and concealment of material information.  Consolidation is appropriate where there are actions involving common questions of law or fact.  *See* Fed. R. Civ. P. 42 (a);  *see also Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (3d Cir. 1990). That test is met here and, accordingly, the Actions should be consolidated.

**B.      Plumbers and Pipefitters Fund Should Be Appointed Lead Plaintiff**

**1.      The Procedure Required by the PSLRA**

The PSLRA has established a procedure that governs the appointment of a lead plaintiff in "each private action arising under the [Securities Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(1) and (a)(3)(B)(i).

First, the plaintiff who files the initial action must publish a notice to the class, within 20 days of filing the action, informing class members of their right to file a motion for appointment as lead plaintiff. 15 U.S.C. §78u-4(a)(3)(A)(i). Plaintiff in the action captioned *Fred P. Campo v. Sears Holdings Corporation, et al.*, No. 1:06-cv-4053-JES (the "*Campo* Action"), caused the first notice regarding the pendency of these actions to be published in *Investor's Business Daily*, a national, business-oriented newspaper, on June 2, 2006. *See* Rudman Decl., Ex. A. Within 60 days after publication of the notice, any person or group of persons who are members of the proposed class may apply to the Court to be appointed as lead plaintiff, whether or not they have previously filed a complaint in the action. 15 U.S.C. §§78u-4(a)(3)(A) and (B).

Second, the PSLRA provides that, within 90 days after publication of the notice, the Court shall consider any motion made by a class member and shall appoint as lead plaintiff the member or members of the class that the Court determines to be most capable of adequately representing the interests of class members. 15 U.S.C. §78u-4(a)(3)(B). In determining the "most adequate plaintiff," the PSLRA provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this Act is the person or group of persons that
>
> (aa) has either filed the complaint or made a motion in response to a notice...
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

- 5 -

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. §78u-4(a)(3)(B)(iii).  *See generally Greebel v. FTP Software*, 939 F. Supp. 57, 64 (D. Mass. 1996).

### 2.   Plumbers and Pipefitters Fund Satisfies the "Lead Plaintiff" Requirements of the Exchange Act

#### a.   Plumbers and Pipefitters Fund Has Complied with the Exchange Act and Should Be Appointed Lead Plaintiff

The time period in which class members may move to be appointed lead plaintiff herein under 15 U.S.C. §78u-4(a)(3)(A) and (B) expires on August 1, 2006.  Pursuant to the provisions of the PSLRA and within the requisite time frame after publication of the required notice on June 2, 2006, Plumbers and Pipefitters Fund timely moves this Court to be appointed Lead Plaintiff on behalf of all members of the class.

Plumbers and Pipefitters Fund has duly signed and filed a certification stating that it is willing to serve as a representative party on behalf of the class.  *See* Rudman Decl., Ex. B.  In addition, Plumbers and Pipefitters Fund has selected and retained competent counsel to represent itself and the class.  *See* Rudman Decl., Ex. C.  Accordingly, Plumbers and Pipefitters Fund has satisfied the individual requirements of 15 U.S.C. §78u-4(a)(3)(B) and is entitled to have its application for appointment as Lead Plaintiff and selection of Lead Counsel as set forth herein, considered and approved by the Court.

#### b.   Plumbers and Pipefitters Fund Is Precisely the Type of Lead Plaintiff Congress Envisioned When it Passed the PSLRA

The Congressional objective in enacting the lead plaintiff provisions was to encourage large, organized institutional investors to play a more prominent role in securities class actions.  *See* H.R. Conf. Rep. No. 104-369, at 34 (1995), reprinted in 1995 U.S.C.C.A.N. 679, 733 ("The Conference

- 6 -

Committee believes that increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions.").

Congress reasoned that increasing the role of institutional investors, which typically have a large financial stake in the outcome of the litigation, would be beneficial because institutional investors with a large financial stake are more apt to effectively manage complex securities litigation.  Plumbers and Pipefitters Fund, as an institutional investor, is precisely the type of lead plaintiff Congress envisioned when it passed the PSLRA.  *See id.*

**c.      Plumbers and Pipefitters Fund Has the Requisite
Financial Interest in the Relief Sought by the Class**

During the Class Period, as evidenced by, among other things, the accompanying signed certification, Plumbers and Pipefitters Fund sold 37,575 shares of Kmart stock at a price of $28.85 per share and suffered losses thereby.  *See* Rudman Decl., Ex. B.  Plumbers and Pipefitters Fund thus has a significant financial interest in this case.  Therefore, Plumbers and Pipefitters Fund satisfies all of the PSLRA's prerequisites for appointment as Lead Plaintiff in these actions and should be appointed Lead Plaintiff pursuant to 15 U.S.C. §78u-4(a)(3)(B).

**d.      Plumbers and Pipefitters Fund Otherwise Satisfies Rule
23**

According to 15 U.S.C. §78u-4(a)(3)(B), in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure."  Rule 23(a) provides that a party may serve as a class representative only if the following four requirements are satisfied: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims

- 7 -

or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Of the four prerequisites to class certification, only two – typicality and adequacy – directly address the personal characteristics of the class representative.  Consequently, in deciding a motion to serve as lead plaintiff, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until the lead plaintiff moves for class certification.  *See Lax v. First Merchants Acceptance Corp.*, No. 97-C-2175 (DHC), 1997 U.S. Dist. LEXIS 11866 at *20, (N.D. Ill. Aug. 6, 1997).  Plumbers and Pipefitters Fund satisfies both the typicality and adequacy requirements of Rule 23, thereby justifying its appointment as Lead Plaintiff.

Under Rule 23(a)(3), the claims or defenses of the representative parties must be typical of those of the class.  Typicality exists where the plaintiffs' claims arise from the same series of events and are based on the same legal theories as the claims of all the class members.  *See Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986).  Typicality does not require that there be no factual differences between the class representatives and the class members because it is the generalized nature of the claims asserted which determines whether the class representatives are typical.  *See Sofran v. Labranche & Co.,* 220 F.R.D. 398, 402 (S.D.N.Y. 2004) ("The possibility of factual distinctions between the claims of the named plaintiffs and those of other class members does not destroy typicality, as similarity of legal theory may control even in the face of differences of fact").  The requirement that the proposed class representatives' claims be typical of the claims of the class does not mean, however, that the claims must be identical.  *See Ferrari,* 2004 U.S. Dist. LEXIS 13898, at *18.

Plumbers and Pipefitters Fund satisfies this requirement because, just like all other class members, it: (1) sold Kmart shares during the Class Period; (2) was adversely affected by defendants' false and misleading statements; and (3) suffered damages as a result thereof. Thus, the Plumbers and Pipefitters Fund's claims are typical of those of other class members since their claims and the claims of other class members arise out of the same course of events. Under Rule 23(a)(4) the representative parties must also "fairly and adequately protect the interests of the class." The PSLRA directs this Court to limit its inquiry regarding the adequacy of Plumbers and Pipefitters Fund to represent the class to the existence of any conflicts between the interest of Plumbers and Pipefitters Fund and the members of the class. The Court must evaluate adequacy of representation by considering: (i) whether the class representatives' claims conflict with those of the class; and (ii) whether class counsel is qualified, experienced, and generally able to conduct the litigation. *See In re Global Crossing Sec. & ERISA Litig.*, No. 02 md 1472 (GEL), 2004 U.S. Dist. LEXIS 23946, at *53 (S.D.N.Y. Nov. 24, 2004).

Here, Plumbers and Pipefitters Fund is an adequate representative of the class. As evidenced by the injuries suffered by Plumbers and Pipefitters Fund and the class, the interests of Plumbers and Pipefitters Fund are clearly aligned with the members of the class, and there is no evidence of any antagonism between Plumbers and Pipefitters Fund's interests and those of the other members of the class. Further, Plumbers and Pipefitters Fund has taken significant steps which demonstrate it will protect the interests of the class: it has retained competent and experienced counsel to prosecute these claims. In addition, as shown below, Plumbers and Pipefitters Fund's proposed Lead Counsel is highly qualified, experienced and able to conduct this complex litigation in a professional manner. Thus, Plumbers and Pipefitters Fund *prima facie* satisfies the commonality, typicality and adequacy requirements of Rule 23 for the purposes of this motion.

- 9 -

**C.      The Court Should Approve Plumbers and Pipefitters Fund's Choice
of Counsel**

Pursuant to 15 U.S.C. §78u-4(a)(3)(B)(v), the proposed lead plaintiff shall, subject to Court

approval, select and retain counsel to represent the class he seeks to represent.  In that regard,

Plumbers and Pipefitters Fund has selected the law firm of Lerach Coughlin as Lead Counsel, a firm

which has substantial experience in the prosecution of shareholder and securities class actions,

including serving as lead counsel in *In re Enron Corp. Sec. Litig.*, No. H-01-3624 (MH), 2005 U.S.

Dist. LEXIS 39867 (S.D. Tex. Dec. 22, 2005) in which Lerach Coughlin has obtained recoveries to

date which represent the largest recovery ever obtained in a shareholder class action.  *See* Rudman

Decl., Ex. C.  Accordingly, the Court should approve Plumbers and Pipefitters Fund's selection of

counsel.

**IV.      CONCLUSION**

For all the foregoing reasons, Plumbers and Pipefitters Fund respectfully requests that the

Court: (i) consolidate the related actions; (ii) appoint it as Lead Plaintiff in the Actions; (iii) approve

its selection of Lead Counsel as set forth herein; and (iv) grant such other relief as the court may

deem just and proper.

DATED:  August 1, 2006                LERACH COUGHLIN STOIA GELLER
                                        RUDMAN & ROBBINS LLP
                                      SAMUEL H. RUDMAN (SR-7957)
                                      DAVID A. ROSENFELD (DR-7564)
                                      MARIO ALBA, JR. (MA-7240)


                                              /s/ Samuel H. Rudman
                                      _____
                                         SAMUEL H. RUDMAN

                                      58 South Service Road, Suite 200
                                      Melville, NY  11747
                                      Telephone:  631/367-7100
                                      631/367-1173 (fax)

                                      [Proposed] Lead Counsel for Plaintiff

- 10 -