UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| IN RE SEARS HOLDINGS CORPORATION SECURITIES LITIGATION | Electronically Filed<br><br>No. 06 Civ. 4053 (JES)<br><br>ECF Case |

## MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE CONSOLIDATED CLASS ACTION COMPLAINT

WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, New York  10019
Telephone:  (212) 403-1000
Facsimile:  (212) 403-2000

*Attorneys for Defendants Sears Holdings*
*Corporation, Edward S. Lampert and Julian Day*

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF FACTS ...................................................................................... 3

ARGUMENT ........................................................................................................ 5

I.    PLAINTIFFS HAVE FAILED TO PLEAD ACTUAL
      ECONOMIC LOSS ...................................................................................... 6

      A.    The Complaint does not allege that any Plaintiff suffered an
            out-of-pocket loss ............................................................................. 7

      B.    To the extent Plaintiffs sold at a "fraud discount," they acquired
            their shares at the same discount and lack cognizable damages ...... 11

      C.    Plaintiffs should not be permitted to mount a collateral attack on
            the Bankruptcy Court's Confirmation Order .................................... 13

CONCLUSION ..................................................................................................... 15

## TABLE OF AUTHORITIES

**Cases**                                                                                         **Page**

Amron v. Morgan Stanley Inv. Advisors Inc., 464 F.3d 338 (2d Cir. 2006)...............................6-7

Barrows v. Forest Labs., Inc., 742 F.2d 54 (2d Cir. 1984)...........................................9, 10

Browning v. Prostok, 165 S.W. 336 (Tex. 2005) .....................................................14, 15

Carlisle Ventures, Inc. v. Banco Espanol de Credito, S.A.,
    176 F.3d 601 (2d Cir. 1999) ...............................................................7, 8, 9, 10

Commercial Union Assurance Co., plc v. Milken,
    17 F.3d 608 (2d Cir. 1994) ...................................................................7, 9, 10

Dura Pharms., Inc. v. Broudo, 544 U.S. 336 (2005)....................................................6, 11

Ganino v. Citizens Utils. Co., 228 F.3d 154 (2d Cir. 2000) ........................................4 n.2

Gurary v. Winehouse, 190 F.3d 37 (2d Cir. 1999) ........................................................7

In re Cornerstone Propane Partners, L.P. Sec. Litig., No. C 03-2522,
    2006 WL 1180267 (N.D. Cal. May 3, 2006)...............................................................11

In re Emerald Acquisition Corp., 170 B.R. 632 (Bankr. N.D. Ill. 1994)...................................13

In re Estee Lauder Cos. Sec. Litig., No. 06 Civ. 2505, 2007 WL 1522620
    (S.D.N.Y. May 21, 2007)...............................................................................8

In re Lawrence, 293 F.3d 615 (2d Cir. 2002) .....................................................15 n.10

In re Omnivision Techs., No. C-04-2297, 2008 WL 123936
    (N.D. Cal. Jan. 9, 2008)..............................................................................11

In re Pence, 905 F.2d 1107 (7th Cir. 1990) ............................................................13

In re Pronetlink Sec. Litig., No. 03 Civ. 2298, 2006 WL 1029069
    (S.D.N.Y. Apr. 19, 2006)...........................................................................11-12

In re Public Serv. Co. of New Hampshire, 43 F.3d 763 (1st Cir. 1995)................................14, 15

JSMS Rural LP v. GMG Capital Partners III, LP, No. 04 Civ. 8591,
    2006 WL 1867482 (S.D.N.Y. July 6, 2006), aff'd on reconsideration,
    2006 WL 2239681 (S.D.N.Y. Aug. 4, 2006)...............................................................8

Levie v. Sears, Roebuck & Co., 496 F. Supp. 2d 944 (N.D. Ill. 2007) ...............................12 n.8

LNC Invs., Inc. v. First Fidelity Bank, No. 92 Civ. 7584, 1997 WL
    528283 (S.D.N.Y. Aug. 27, 1997)......................................................................7

Osofsky v. Zipf, 645 F.2d 107 (2d Cir. 1981) .................................................................9

Panos v. Island Gem Enters., Ltd., 880 F. Supp. 169 (S.D.N.Y. 1995)....................................... 8-9

Stoll v. Gottlieb, 305 U.S. 165 (1938)..........................................................................13

Sure-Snap Corp. v. State St. Bank & Trust Co., 948 F.2d 869
    (2d Cir. 1991)....................................................................................................13, 15

## Treatises, Statutes and Rules

3 Thomas Lee Hazen, Law of Sec. Reg. § 12.12[1] (5th ed. 2008)...................................................9

11 U.S.C. § 1129(a)(7).............................................................................................3, 14

11 U.S.C. § 1141(a) ...................................................................................................13

15 U.S.C. § 78j(b)......................................................................................................5

15 U.S.C. § 78bb(a) ....................................................................................................7

17 C.F.R. § 240.10b-5..................................................................................................5

Federal Rule of Civil Procedure 12(b)(6) ..............................................................................6

## PRELIMINARY STATEMENT

In this putative class action, brought on behalf of former shareholders of Kmart Corporation who sold shares during the first sixteen months following Kmart's emergence from bankruptcy, Plaintiffs Fred P. Campo, Leonard Cope, Plumbers and Pipefitters National Pension Fund and the Mississippi Public Employees Retirement System (collectively, "Plaintiffs") allege that Edward S. Lampert and Julian Day — Kmart's Chairman and CEO, respectively — deliberately withheld information about the value of Kmart's real estate to suppress the price of Kmart shares. Although Mr. Lampert and Mr. Day each were major investors in Kmart, Plaintiffs implausibly contend that they intentionally suppressed the price of Kmart's shares out of an unexplained desire to delay the market's realization that the investment firm run by Mr. Lampert had made a profitable investment in Kmart during its bankruptcy.

At the hearing on the motion to dismiss the Consolidated Class Action Complaint ("Complaint"), this Court recognized that Plaintiffs' case — which is based in substantial part on allegations made by unnamed sources — is "very thin." Tr. of Argument, Campo v. Sears Holdings Corp., et al., No. 06 Civ. 4053, Apr. 15, 2008, at 61:10. Thus, the Court denied Defendants' motion to dismiss without prejudice; permitted Defendants to take discovery of Plaintiffs' unnamed sources; and directed the parties to return to Court for a hearing on the question of whether the information provided by those sources is sufficient to state a claim for relief.

Separately, at the hearing on the motion to dismiss, the Court raised the issue of whether the damages Plaintiffs seek are recoverable as a matter of law:

18      THE COURT: You were holding your shares at the end of
19   the class period?
20      MR. EISENHOFER: No. The plaintiffs had sold. All
21   the people that we represent sold their shares before that

22    because that's what we represent, a class of sellers who

23    presumably would have received more money for their shares.

24          THE COURT: That's not a recognized theory of damages,

25    that you would have received more money for your shares if you

1     got back your investment by selling your shares to somebody

2     else. Where is your damages?

3           MR. EISENHOFER: Your Honor, I think it is a

4     recognized –

5           THE COURT: No, I don't think so. I don't think what

6     you could have made[ ] is a measure of damages. The question is,

7     what loss did you actually suffer? And a loss is a loss.

Id. at 52:18-53:7. At a subsequent conference with the parties on April 30, 2008 and by order

dated May 1, 2008, the Court directed the parties to submit briefing on the damages issue. As

explained herein, Plaintiffs have failed to allege any compensable injury; thus, the Court should

dismiss the Complaint as a matter of law, even without regard to whether or not the unnamed

sources provided Plaintiffs with sufficient bases for the Complaint's allegations.

The injury that Plaintiffs have asserted — namely, that they could have sold their

Kmart shares at higher prices had they known the "truth" about the value of Kmart's real estate

portfolio — is insufficient to support a claim for relief for three independent reasons.

First, Plaintiffs have not alleged that they suffered any actual, out-of-pocket losses

as a result of their acquisition and subsequent sale of Kmart shares, as is required to state a claim

for securities fraud. Plaintiffs Fred P. Campo and Leonard Cope (together, the "Individual

Plaintiffs") received shares through the bankruptcy that were worth approximately $15 each, but

sold those shares at a higher price. Having profited on the shares at issue, Individual Plaintiffs

cannot, as a matter of law, show cognizable damages. Similarly, the Plumbers and Pipefitters

National Pension Fund and the Mississippi Public Employees Retirement System (together, the

"Institutional Plaintiffs") have no cognizable damages: they bought and sold their shares in the

open market and do not contend that they realized a loss.

-2-

Second, although Plaintiffs claim that they sold their Kmart shares at a "fraud discount," Plaintiffs necessarily obtained those shares at the same alleged discount, and, therefore, could not have suffered any loss as a result of the alleged fraud. As a matter of law and simple logic, if Kmart's shares were "undervalued" when they were sold, they were also "undervalued" when they were received or purchased by Plaintiffs, and the identical undervaluation at acquisition and disposition would "cancel each other out" leaving the Plaintiffs with no loss.

Third, any claim by Plaintiffs that they suffered damages in this case because Defendants undervalued Kmart's real estate amounts to an impermissible attack on the valuation of Kmart's assets approved by the Bankruptcy Court. The Individual Plaintiffs, who received their shares in the bankruptcy, and the Institutional Plaintiffs, who are necessarily in privity with someone who received shares in the bankruptcy, are precluded from challenging the value the Bankruptcy Court ascribed to Kmart's assets and, by extension, their shares.

## STATEMENT OF FACTS

To secure approval of its plan of reorganization ("Plan"), Kmart was required to demonstrate to the Bankruptcy Court that Kmart's value as a reorganized company was greater than its value on a liquidation basis. See 11 U.S.C. § 1129(a)(7). Thus, along with its final, court-approved disclosure statement filed on Feb. 26, 2003 ("Disclosure Statement"), Kmart submitted to the Bankruptcy Court a third-party valuation of its real estate and other fixed assets. According to that valuation, the liquidation value of those assets was between $593,359,000 and $878,996,000, and the full value of those assets was no more than double those amounts. See

-3-

Disclosure Statement (Kleinhaus Decl.[1] Ex. 1), App. B at B-13. In approving Kmart's Plan, the Bankruptcy Court specifically found that the third-party appraisal of Kmart's real estate was "persuasive, credible and accurate as of the dates" it was prepared. Confirmation Order (Kleinhaus Decl. Ex. 2), at 14 (emphasis added).

The day after Kmart emerged from bankruptcy, the efficient, publicly-traded market in shares of Kmart common stock (see Compl. ¶ 174c) valued shares of that stock at approximately $15 per share,[2] which was within the range of values attributed by the Bankruptcy Court to Kmart's shares (see Disclosure Statement (Kleinhaus Decl. Ex. 1.), App. D at 1). During the first week of trading after Kmart's emergence from bankruptcy, Kmart's shares reached a high price of $15.25 per share. See Exhibit A attached hereto (listing historical stock prices of Kmart Corporation (predecessor to Sears Holdings Corporation (SHLD)) during the class period).

Plaintiffs Campo and Cope are individual investors who purchased Kmart bonds that were exchanged for shares of Kmart common stock in connection with the company's reorganization under Chapter 11. Compl. ¶ 15. Cope sold 171 shares of Kmart common stock on September 23, 2003 for $26.85 per share.[3] Campo sold 285 shares of Kmart common stock

---

[1] The "Kleinhaus Declaration" refers to the Declaration of Emil A. Kleinhaus in Support of Defendants' Motion to Dismiss the Consolidated Class Action Complaint filed with Defendants' Opening Brief (Docket Nos. 42 and 43).

[2] The Court may consider public trading data in connection with a motion to dismiss. See Ganino v. Citizens Utils. Co., 228 F.3d 154, 166 n.8 (2d Cir. 2000) ("[T]he district court may take judicial notice of well-publicized stock prices without converting the motion to dismiss into a motion for summary judgment.").

[3] See Decl. of Mark C. Gardy in Support of the Motion of Fred P. Campo and Leonard Cope for Appointment as Lead Plaintiffs and Approval of Their Selection of Lead Counsel, Ex. B (Docket No. 16).

-4-

on June 3, 2003 for $15.45.[4]  Both Cope and Campo, therefore, sold their shares at a price above the price at which those shares first traded when Kmart emerged from bankruptcy.

The Plumbers and Pipefitters National Pension Fund ("Plumbers and Pipefitters") and the Mississippi Public Employees Retirement System ("MPERS") purchased Kmart stock after Kmart emerged from bankruptcy.  Plumbers and Pipefitters has not disclosed the price that it paid for Kmart common stock, but it sold 37,575 shares on February 25, 2004 for $25.85 per share.[5]  There is no allegation that Plumbers and Pipefitters sold its shares at a loss.

MPERS engaged in various transactions involving the purchase and sale of shares of Kmart common stock between December 2003 and June 2004:  MPERS purchased Kmart common stock at prices between $23.1050 per share and $30.0000 per share and sold those shares at prices between $34.1522 per share and $62.2768 per share.[6]  The record confirms, therefore, that MPERS likewise did not sell its shares at a loss.

## ARGUMENT

To state a claim for securities fraud under Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, a plaintiff is required to plead the following elements: "(1) a

---

[4]    See id., Ex. A.

[5]    See Certification of Named Plaintiff Pursuant to Federal Securities Laws at Schedule A, Declaration of Samuel H. Rudman in Support of the Motion of Plumbers and Pipefitters for Consolidation, Appointment as Lead Plaintiff and for Approval of Selection of Lead Counsel, Ex. B (Docket No. 13).

[6]    See Declaration of Geoffrey C. Jarvis in Support of MPERS's Motion for Consolidation, for its Appointment as Lead Plaintiff and for the Approval of its Selection of Counsel, Ex. A, Schedule A (Docket No. 19).

material misrepresentation (or omission); (2) scienter, i.e., a wrongful state of mind; (3) a
connection with the purchase or sale of a security; (4) reliance . . . ; (5) economic loss; and (6)
loss causation, i.e., a causal connection between the material misrepresentation and the loss."
Dura Pharms., Inc. v. Broudo, 544 U.S. 336, 341-42 (2005) (internal citations, quotation marks
and emphases omitted). This memorandum focuses on the fifth and sixth of these elements —
namely, economic loss and loss causation — which Plaintiffs have failed to plead as required by
Dura and its progeny.

## POINT I

## PLAINTIFFS HAVE FAILED TO PLEAD ACTUAL ECONOMIC LOSS

In Dura Pharmaceuticals, Inc. v. Broudo, the Supreme Court rejected an
investor's attempt to plead loss causation and economic loss by merely alleging that the price of
a security was inflated due to an alleged misrepresentation. The Court concluded that the
plaintiff-investor was obligated, in his complaint, to "provide a defendant with some indication
of the loss and the causal connection that the plaintiff has in mind." 544 U.S. at 347. The Court
recognized that "allowing a plaintiff to forgo giving any indication of the economic loss and
proximate cause that the plaintiff has in mind would bring about harm of the very sort the
statutes seek to avoid" — namely, permitting a plaintiff "with a largely groundless claim to
simply take up the time of a number of other people, with the right to do so representing an in
terrorem increment of the settlement value, rather than a reasonably founded hope that the
[discovery] process will reveal relevant evidence." Id. (emphasis and alteration in original;
internal quotation marks omitted).

The Second Circuit has hewn closely to Dura. For instance, in Amron v. Morgan
Stanley Investment Advisors, en route to affirming an order of the District Court dismissing a
federal securities action under Federal Rule of Civil Procedure 12(b)(6), the Court explained

that, to survive a motion to dismiss, a plaintiff must adequately allege "that he suffered an economic loss and that the defendant's fraudulent conduct was the proximate cause of the plaintiff's loss." 464 F.3d 338, 343 (2d Cir. 2006). Here, Plaintiffs have failed to meet that burden: (a) they do not allege any actual, out-of-pocket loss; (b) they fail to show that even if they had suffered any actual loss it could have been caused by Defendants' alleged misstatements or omissions, which would have affected the acquisition price of Plaintiffs' shares to the same extent as they affected the sale price; and (c) they put forward a theory of economic loss — namely, that they sold their shares at a discount to their "true" value — that is a direct, collateral attack on the Bankruptcy Court's order confirming Kmart's Chapter 11 Plan.

## A.   The Complaint does not allege that any Plaintiff suffered an out-of-pocket loss.

The Second Circuit adheres to an out-of-pocket measurement of damages in 10b-5 actions. See Carlisle Ventures, Inc. v. Banco Espanol de Credito, S.A., 176 F.3d 601, 605 (2d Cir. 1999) (reasoning that the proper measure of damages in a 10b-5 action cannot be based on "undue speculation," and is the "difference, if any, between the price paid and the price received on resale"); Commercial Union Assurance Co., plc v. Milken, 17 F.3d 608, 609 (2d Cir. 1994) (Plaintiffs "suffered no out-of-pocket loss since their investments were fully repaid" and therefore "plaintiffs can prove no damages"); see also Exchange Act § 28(a), 15 U.S.C. § 78bb(a) (limiting damages to the amount of a plaintiff's "actual damages on account of the act complained of" (emphasis added)); Gurary v. Winehouse, 190 F.3d 37, 46 (2d Cir. 1999) ("common sense application of section 28(a) of the Exchange Act" requires actual damages); LNC Invs., Inc. v. First Fidelity Bank, No. 92 Civ. 7584, 1997 WL 528283, at *34 (S.D.N.Y. Aug. 27, 1997) (explaining that "[u]nder the Securities Exchange Act, actual damages are measured by out-of-pocket losses"). A plaintiff, therefore, cannot state a claim for securities fraud by speculatively positing that, in the absence of fraud, he would have made an even greater

-7-

profit on the sale of securities at issue. See Carlisle, 176 F.3d at 606 (concluding that "[b]ecause
Carlisle recognized a profit from the sale of the Banesto stock, Carlisle did not suffer
compensable damages entitling it to recover"); id. at 607 ("Carlisle did not suffer compensable
damages because it recouped its entire investment as well as a small profit, when it resold the
Banesto shares."). In other words, where a plaintiff does not incur an actual loss as a result of an
alleged misrepresentation, the plaintiff suffers no cognizable damages under Rule 10b-5. See In
re Estee Lauder Cos. Sec. Litig., No. 06 Civ. 2505, 2007 WL 1522620, at *1 (S.D.N.Y. May 21,
2007) (granting a motion to dismiss a securities fraud complaint: "[a]s it is perfectly plain that
plaintiff would have profited if he sold after September 11, 2006, may have profited even if he
sold before September 11, 2006, and may well profit in the future if he has not yet sold, this
complaint patently fails to plead loss causation for this reason alone" (footnote omitted)).

Here, the Complaint does not allege that any Plaintiff sold his (or its) shares at a
loss. The Individual Plaintiffs are alleged to have sold their shares for more than their value as
of Kmart's emergence from bankruptcy.[7] MPERS is alleged to have made a profit on its shares,
and Plumbers and Pipefitters does not disclose the price paid for its shares, precluding any
inference of loss. Absent any allegation of out-of-pocket losses on Kmart stock, Plaintiffs' Rule
10b-5 claim fails as a matter of law. See JSMS Rural LP v. GMG Capital Partners III, LP, No.
04 Civ. 8591, 2006 WL 1867482, at *3 (S.D.N.Y. July 6, 2006) (because "plaintiff has neglected
to indicate exactly how it suffered a loss," its "Rule 10b-5 claim fails as a matter of law"
(emphasis in original)), aff'd on reconsideration, 2006 WL 2239681 (S.D.N.Y. Aug. 4, 2006);
see also Panos v. Island Gem Enters., Ltd., N.V., 880 F. Supp. 169, 176 (S.D.N.Y. 1995)

---

[7]    Plaintiffs only allege losses vis-à-vis the amounts the Individual Plaintiffs paid for
Kmart's bonds (see Compl. ¶ 15), which were discharged by court order in the bankruptcy and
are not at issue here. The Complaint lacks any allegation that any Plaintiff lost money on the
sale of Kmart stock.

(granting a motion in limine to restrict plaintiffs' potential recovery and reasoning that "Defendants correctly point out that in most cases brought under the 1934 Act defrauded buyers are restricted to recovering solely their out-of-pocket losses" because "under most circumstances benefit-of-the-bargain damages are highly speculative"); 3 Thomas Lee Hazen, Law of Sec. Reg. § 12.12[1] (5th ed. 2008) ("Failure to allege or prove actual damages will result in dismissal of any 10b-5 damage claim.").

Any claim by Plaintiffs that they should have made more money than they did on sales of Kmart common stock is far too speculative to support a damages award. In Osofsky v. Zipf, the Second Circuit held that benefit-of-the-bargain damages — i.e., the difference between the market value of a security and the value that would have existed absent an alleged misrepresentation — are recoverable "only when they can be established with reasonable certainty" — for example, in "the limited situation . . . where misrepresentation is made in the tender offer and proxy solicitation materials as to the consideration to be forthcoming upon an intended merger." 645 F.2d 107, 114 (1981). Subsequent cases have confined Osofsky to its specific facts, and rejected damages awards in favor of Plaintiffs who did not lose money on their investments. See Carlisle, 176 F.3d at 606 ("Carlisle did not suffer compensable damages entitling it to recover the difference between the purchase price and the 'true value' of the . . . stock at the time of purchase."); Commercial Union, 17 F.3d at 614 ("benefit-of-the-bargain" damages only available when "they can be calculated with reasonable certainty"); Barrows v. Forest Labs., Inc., 742 F.2d 54, 60 (2d Cir. 1984) (declining to apply Osofsky in the context of a sellers' class where "appellants' proposed claim is based on the value the stock purportedly would have had if Forest's true financial condition had been publicly known at the time of the transaction, clearly a speculative proposition"). As the Second Circuit explained in Barrows v. Forest Labs., Inc., benefit-of-the-bargain damages are only available where predicated on "the bargain that was actually struck, not on a bargain whose terms must be supplied by hypotheses

about what the parties would have done if the circumstances surrounding their transaction had been different." 742 F.2d at 60; accord Commercial Union, 17 F.3d at 614-15 (rejecting a measure of damages based on "extrapolation of the returns the Partnership would have earned" and explaining that "[t]he concept of recovery of damages for a benefit-of-the-bargain is founded on the agreement made, not on a proposed hypothetical agreement built on outside evidence and on speculation regarding what the parties might have done or received had the circumstances surrounding the agreement been different" (emphasis in original and internal quotation marks omitted)).

Here, as in the Second Circuit cases in which speculative, benefit-of-the-bargain damages have been rejected as a matter of law, any damages suffered by Plaintiffs as a result of the alleged understatement of Kmart's real estate value cannot possibly be established "with reasonable certainty." Thus, Plaintiffs are limited as a matter of law to out-of-pocket damages; and, having failed to allege any such damages, their claims must be dismissed. See Barrows, 742 F.2d at 60 (affirming an order granting a motion to dismiss a securities fraud complaint because "[t]he issue is not whether appellants were entitled to assume that the market price of the Forest stock in 1969 reflected Forest's true financial condition, but instead whether they have suffered legally compensable damages as a result of the fact that it did not"); see also Carlisle, 176 F.3d at 607 (reversing the District Court's judgment awarding damages to Carlisle where Carlisle "has cited no case in which a court awarded a purchaser of shares the difference between the purchase price and the actual 'true value' of the shares at the time of the purchase when the purchaser had already sold the shares at a profit").

**B.    To the extent Plaintiffs sold at a "fraud discount," they
       acquired their shares at the same discount and lack
       cognizable damages.**

Given that Plaintiffs benefited from the steadily increasing price of Kmart shares
during the Class Period, they cannot allege an actual loss because they have not suffered one.
Instead, Plaintiffs complain that they could have profited more from the sale of their Kmart
shares in the absence of an alleged "fraud discount." As matter of law, however, Plaintiffs
cannot show any damages resulting from that supposed "fraud discount" because, based on the
facts alleged in the Complaint, the alleged detriment suffered by Plaintiffs from the "fraud
discount" when they sold Kmart shares (i.e., a cheaper sales price) would exactly offset the
benefit realized by Plaintiffs from the "fraud discount" when they acquired Kmart shares (i.e., a
cheaper purchase price).

In Dura, the Supreme Court held that, where a purchaser in a 10b-5 case "sells the
shares quickly before the relevant truth begins to leak out, the misrepresentation will not have led
to any loss." 544 U.S. at 342. Under Dura, therefore, a purchaser alleging the existence of a
"fraud premium" can state a claim for securities fraud only if he holds his shares until the "fraud
premium" is no longer present. See, e.g., In re Omnivision Techs., No. C-04-2297, 2008 WL
123936, at *6 (N.D. Cal. Jan. 9, 2008) (class members who "bought and sold all of their . . .
shares during the Class Period and held none at the time of the purportedly corrective disclosure"
had no viable claim); In re Cornerstone Propane Partners, L.P. Sec. Litig., No. C 03-2522, 2006
WL 1180267, at *8 (N.D. Cal. May 3, 2006) ("Here, since corrective disclosure is alleged to
have occurred only from July 2001 onwards, under Dura there can be no loss causation for
plaintiffs who purchased and sold stock at the inflated share price prior to that disclosure, and
thus these plaintiffs may not recover at all."); see also In re Pronetlink Sec. Litig., No. 03 Civ.
2298, 2006 WL 1029069, at *1 (S.D.N.Y. Apr. 19, 2006) ("[A]s a matter of pure logic, at the

-11-

moment the transaction takes place, the plaintiff has suffered no loss; the inflated purchase payment is offset by ownership of a share that at that instant possesses equivalent value.").

The exact same logic applies to this case, where Plaintiffs allege that they sold their shares at a "fraud discount."[8] Whether Plaintiffs acquired their shares through the bankruptcy process or thereafter in the open market, the market was, according to Plaintiffs, laboring under the same misconceptions about Kmart's real estate value as it was when Plaintiffs sold their shares. Accordingly, whatever the amount of the alleged "fraud discount," it was constant, and Plaintiffs suffered no cognizable damages.[9]

---

[8]    Defining the parameters of a putative class in Levie v. Sears, Roebuck & Co., the U.S. District Court for the Northern District of Illinois granted a motion for class certification in part and declined to apply the reasoning of Dura in that context to all members of the putative class that sold shares after alleged merger discussions became material but before they were disclosed. 496 F. Supp. 2d 944 (2007). In so ruling, and without citation to any authority, the Court concluded that at least some members of the putative class who bought shares before the secret merger negotiations allegedly became material, and sold them after the negotiations became material but before they were disclosed, may have been damaged. Id. at 948. Whatever the merits of this decision on class certification, it is wholly inapposite here where the claim is that Kmart share prices were depressed throughout the entire class period because of the allegedly wrongful nondisclosure of the supposed "true value" of Kmart's real estate holdings. The Levie decision is also irrelevant to, if not at odds with, the Second Circuit case law, discussed supra, Part I.A., that requires a plaintiff to plead out-of-pocket loss to state a claim for securities fraud and holds that a plaintiff cannot satisfy his obligation to plead proper damages by contending that he should have received an even greater profit than that he already enjoyed.

[9]    Plaintiffs allege that the truth began to "leak out" as of June 4, 2004. Compl. ¶ 178. Any Plaintiff that sold after the leak began received both the benefit of the alleged "fraud discount" in the acquisition of the shares and something closer to the supposed "true value" of the shares upon the sale, thus enjoying a windfall and certainly not suffering any damages.

-12-

## C.    Plaintiffs should not be permitted to mount a collateral attack on the Bankruptcy Court's Confirmation Order.

Under long-settled law, a bankruptcy court's order confirming a plan of reorganization is treated as a final judgment given preclusive effect under the doctrine of res judicata. See Stoll v. Gottlieb, 305 U.S. 165, 170-71 (1938); Sure-Snap Corp. v. State St. Bank & Trust Co., 948 F.2d 869, 873 (2d Cir. 1991). Thus, "any attempt by the parties or those in privity with them to relitigate any of the matters that were raised or could have been raised" in a Chapter 11 case is flatly barred. Sure-Snap, 948 F.2d at 873 (emphasis in original and internal quotation marks omitted); see also 11 U.S.C. § 1141(a) ("[T]he provisions of a confirmed plan bind the debtor, any entity issuing securities under the plan, any entity acquiring property under the plan, and any creditor, equity security holder, or general partner in the debtor, whether or not the claim or interest of such creditor, equity security holder, or general partner is impaired under the plan and whether or not such creditor, equity security holder, or general partner has accepted the plan."). Here, Individual Plaintiffs, who received Kmart shares through the bankruptcy process — as well as the Institutional Plaintiffs, who bought shares in the open market and are necessarily in privity with creditors who acquired such shares through the bankruptcy process — are precluded from challenging the Bankruptcy Court's valuation of Kmart's real estate interests. See Sure-Snap, 948 F.2d at 873  (confirmed plan binds creditors and those in privity with them "to all the plan's provisions" (emphasis in original)); see also In re Pence, 905 F.2d 1107, 1110 (7th Cir. 1990) ("[I]nstead of attacking the valuation head-on at the confirmation hearing, Pacesetter has chosen a collateral attack on the confirmation order where valuation may not be contested."); In re Emerald Acquisition Corp., 170 B.R. 632, 644 (Bankr. N.D. Ill. 1994) ("In its Valuation Claims, Artra assails the valuation testimony accepted by the court in the [bankruptcy] proceeding and the role of the Director Defendants in propounding such testimony. The proper forum in which to object to the testimony was the bankruptcy court during the [bankruptcy] proceeding.").

-13-

The value of Kmart's real estate interests as of Kmart's emergence from bankruptcy — the precise matter as to which Plaintiffs claim misstatements or omissions were made, causing them damages — was adjudicated by the Bankruptcy Court. Indeed, because the Bankruptcy Code requires that a debtor's claimholders receive at least as much property through a Chapter 11 plan as in a hypothetical liquidation, see 11 U.S.C. § 1129(a)(7)(A)(ii), that issue had to be adjudicated. In compliance with that requirement, the Bankruptcy Court squarely determined that Kmart's creditors would receive more property in the form of new Kmart equity than if Kmart's assets, including leasehold and fee interests, were sold. See Confirmation Order (Kleinhaus Decl. Ex. 2), at 14. The Court also held that "[t]he liquidation analysis in Appendix B to the Disclosure Statement," including Rockwood Gemini's valuation of Kmart's real estate at between $593,359,000 and $878,996,000 on a liquidation basis, and the supporting evidence "are persuasive, credible and accurate as of the dates such evidence was prepared, presented, or proffered." Id. (emphases added).

Courts have not hesitated to dismiss or enjoin attacks on confirmation orders that masquerade as independent fraud claims. In Browning v. Prostok, for example, a former Chapter 11 debtor's junior bondholders sued a senior bondholder and the debtor's former management for fraud two years after the debtor emerged from bankruptcy, alleging that the defendants caused the court to undervalue the debtor by concealing a cost-savings plan that would be implemented seven months after confirmation. 165 S.W.3d 336, 341-42 (Tex. 2005). As in this case, plaintiffs' claims in Browning "necessarily turn[ed] upon what the judgment of the bankruptcy court should have been" with respect to valuation of the debtor. Id. at 347. In dismissing the lawsuit, the Court concluded that the plaintiffs' fraud claims "constitute[d] an impermissible collateral attack on the bankruptcy's confirmation order." Id. at 349.

Similarly, in In re Public Service Co. of New Hampshire, the Court of Appeals affirmed a Bankruptcy Court order enjoining a securities action brought by pre-bankruptcy

-14-

shareholders, who alleged that "private plan proponents" issued unduly low financial projections so as to push down the debtor's projected reorganization value. 43 F.3d 763, 766-67 (1st Cir. 1995). The Court concluded that the bankruptcy disclosures at issue "were open to attack [during the bankruptcy proceedings]," and that the shareholders "point[ed] to nothing in the way of newly discovered evidence that could explain why the criticisms now made could not have been litigated at the time." Id. at 767.

As in Browning and In re Public Service, the Complaint before this Court strikes at the heart of the Bankruptcy Court's function — i.e., the valuation of the debtor's property. See Sure-Snap, 948 F.2d at 875 ("[f]undamental to [a] bankruptcy court's finding of how much [the debtor] owed[ i]s a finding of how much [the debtor] had — what vestigial worth its business had retained"). Plaintiffs would only be able to establish that they sold Kmart shares at a loss — which they do not allege, even conclusorily — by attacking the third-party valuation adopted by the Bankruptcy Court in its Confirmation Order and contending that the shares Plaintiffs received in the bankruptcy were actually worth more at the time than the Bankruptcy Court concluded those shares were worth. Such a naked attack on the Confirmation Order runs afoul of basic preclusion principles.[10]

## CONCLUSION

For each of the reasons stated above, the Complaint should be dismissed without leave to amend.

---

[10]    Insofar as Plaintiffs aim to demonstrate they "lost money" on Kmart shares, they have never made any effort to seek relief from the Bankruptcy Court's Confirmation Order. Plaintiffs cannot evade their obligation to do so simply by asserting this new action in the District Court. Cf. In re Lawrence, 293 F.3d 615, 624 (2d Cir. 2002) (post-sale-order securities fraud claims brought in Bankruptcy Court effectively seeking relief from Bankruptcy Court's sale order).

Dated:  New York, New York
       May 30, 2008

Respectfully submitted,

WACHTELL, LIPTON, ROSEN & KATZ

By: _____
    Paul Vizcarrondo, Jr. (PV-2335)
    David B. Anders (DA-6932)
    Emil A. Kleinhaus (EK-6731)
    Jonathan E. Goldin (JG-0578)

    51 West 52nd Street
    New York, NY  10019
    Telephone:  (212) 403-1000
    Facsimile:  (212) 403-2000

    *Attorneys for Defendants Sears Holdings*
    *Corporation, Edward S. Lampert and*
    *Julian Day*